**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:

AVERTIN INVESTMENTS LLC,

Case No. : 8:26-bk-09538-LER
Chapter 11 - Subchapter V

Debtor.
_______________________________/ **EMERGENCY HEARING REQUESTED**

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY HEARING**

AVERTIN INVESTMENTS LLC ("Debtor"), by and through undersigned proposed counsel, moves for the entry of an order authorizing the use of cash collateral. Out of an abundance of caution, the Debtor has provided notice of this Motion to the U.S. Small Business Administration ("SBA" or "Secured Creditor"), which may assert an interest in certain assets of the Debtor that could arguably constitute cash collateral. In support of this Motion, Debtor states as follows:

**INTRODUCTION**

1. Debtor requests emergency authorization to use cash collateral retroactive to the petition date for purposes of funding ordinary course operations and expenses in accordance with the budget attached hereto as **Exhibit A** ("Budget"). Debtor is filing a separate certificate of emergency in conjunction with this motion because it will suffer immediate and irreparable harm if it is not permitted to use cash collateral to fund ordinary expenses.

**JURISDICTION**

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §157.

3. Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are §§ 105, 361, 363, and 541 of the Bankruptcy Code; Rules 2002, 4001, 6003, 7004, 9014, and 9034 of the Federal Rules of Bankruptcy Procedure; and Local Rules 2081-1(g)(1) and 9013-1(d) of the United States Bankruptcy Court for the Middle District of Florida.

**BACKGROUND**

5. On October 20, 2026 ("Petition Date"), the Debtor filed a voluntary petition (Doc. 1, "Petition") for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101, *et seq.*, the "Bankruptcy Code"). The Debtor continues to operate its business and manages its property as a debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

6. The Debtor is a Florida limited liability company created by Articles of Organization filed with the Florida Secretary of State on April 23, 2018. The Debtor, Avertin Investments LLC, doing business as Royal Maid Service, operates a residential and commercial cleaning business as a franchisee of The Royal Maid Enterprises, Inc. The Debtor serves customers in the Tampa Bay area, including Tampa and St. Petersburg, offering routine cleaning, deep cleaning, move-in and move-out cleaning, and vacation rental cleaning services.

**Events Leading to Chapter 11 Filing**

7. The Debtor has experienced cash flow and financial difficulties because its business revenue has been insufficient to meet its operating expenses and loan repayment obligations. These obligations have placed increasing pressure on the Debtor's ability to maintain ongoing operations and service its debt. The Debtor commenced this Chapter 11 Case to implement a comprehensive restructuring of its affairs, stabilize its operations, and propose an

effective mechanism to address and resolve all outstanding claims for the benefit of its customers, secured creditors, and unsecured creditors alike. The commencement of this Chapter 11 Case is not the result of any effort to avoid lawful responsibilities or obligations. Rather, the Debtor initiated these proceedings only after conducting a thorough review of all realistic alternatives and carefully weighing a variety of relevant factors.

**Cash Collateral**

8. As used herein, "cash collateral" is defined as set forth in § 363(a) of the Bankruptcy Code and includes, without limitation, cash on hand and accounts receivable.

9. Debtor respectfully requests authority to use all funds that might arguably be considered cash collateral to pay the normal operating expenses and costs associated with running its business and administering this Chapter 11 case.

10. As of the Petition Date, Debtor has approximately $3,214.53 in deposits account with Synovus Bank. Debtor's earnings going forward may arguably be subject to creditors alleged liens described below, and to the extent that such future earnings may be deemed to be cash collateral, Debtor seeks authority to use same.

**Creditors that May Assert Liens on Cash Collateral**

11. The Debtor owes approximately $370,000.00 to the SBA, which is secured by a UCC Financing Statement filed on July 16, 2020 (UCC Filing No. 202003436233), describing its collateral as "[a]ll tangible and intangible personal property . . . ."

12. In its effort to successfully reorganize its business, it is essential that the Debtor operate, which will require the use of funds on hand and funds to be received. Debtor requires immediate access to liquidity to ensure the preservation of business operations and the value of the bankruptcy estate during this Chapter 11 case. Without prompt access to its cash collateral,

the Debtor will be unable to pay normal operating expenses or otherwise fund the administration of the bankruptcy estate. Such an outcome would cause immediate and irreparable harm.

13. During this Chapter 11 case, Debtor will need the cash generated from its operations to satisfy payroll obligations, to obtain supplies, to pay suppliers and vendors, to maintain insurance coverage, to pay taxes, and to make other payments essential to the continued management, operation, and preservation of the Debtor's business. The ability to pay these expenses as they come due is essential to the continuity of business operations and ensuring the preservation of the bankruptcy estate's value during this Chapter 11 case.

14. Debtor has developed the Budget (attached hereto as **Exhibit A**) for the use of cash collateral, which Debtor believes provides sufficient liquidity during the interim period. The Budget contains line items for cash flows anticipated to be received and dispersed during the period for which the Budget is prepared.

15. Except as specifically authorized by law or court order debtor will not use the cash collateral to pay prepetition obligations.

16. Without conceding that the SBA has a lien on the Debtor's cash collateral, as adequate protection for the use of the SBA cash collateral (if any), the Debtor proposes to grant the SBA a replacement lien with the same validity, extent, and priority as their respective prepetition lien(s), if any.

**Legal Argument and Basis for Relief**

17. Section 363(c)(1) of the Bankruptcy Code permits the use of property of the bankruptcy estate in Subchapter V cases: "If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of

property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

18. In this case, Debtor is operating its business and has the powers of a trustee pursuant to § 1184 of the Bankruptcy Code.

19. With respect to the use of cash collateral, § 363(c)(2) of the Bankruptcy Code requires either that "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2); *see also In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010) (explaining that "[t]he Bankruptcy Code prohibits the post-petition use of cash collateral by a trustee or a debtor- in-possession, unless the secured party or the bankruptcy court after notice and a hearing authorizes the use of cash collateral upon a finding that the secured party's interest in the cash is adequately protected").

20. "Section 363(c)(2) balances competing interests in a Chapter 11 reorganization . . . . [A] debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business." *Delco Oil*, 599 F.3d at 1258; *see also In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) (explaining that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated"). Here, the Debtor requires the use of cash collateral to ensure continuation of the business, which is essential to its overall reorganization efforts.

21. Section 363(e) of the Bankruptcy Code provides for "adequate protection" of secured interests in property when a debtor uses cash collateral. *See* 11 U.S.C. § 363(e); *see also* 11 U.S.C. § 361. Likewise, §362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See* 11 U.S.C. § 362(d)(1). While § 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, bankruptcy courts ultimately decide what constitutes sufficient adequate protection on a case-by-case basis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *see also Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). For example, in *O'Connor*, the court held that "[i]n order to encourage the debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1396 (citations omitted); *see also In re Quality Interiors, Inc*., 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that a replacement lien provided adequate protection).

22. Adequate protection is only meant to ensure that the secured creditor receives the value for which it originally bargained pre-bankruptcy. *The Resolution Trust Corp. v. Swede/and Dev. Group, Inc. (In re Swede/and Dev. Group., Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); *see also* 11 U.S.C. § 361. The essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value in the interim between the filing and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). Importantly, adequate protection is only intended to protect secured creditors from <u>diminution of value of the collateral</u> during the interim use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see*

*also In re Becker Indus. Corp*., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp*., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

23. Debtor proposes to provide the SBA with replacement a lien as adequate protection for its respective secured interests (if any), which Debtor submits is sufficient to provide adequate protection to the SBA from any diminution in the value of the collateral during the interim period. *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

24. If the Debtor is not permitted to use the Cash Collateral, it will likely be forced to halt operations, which would result in the loss of the going concern value of the business and a reduction in the value of the estate's assets, resulting in immediate and irreparable harm. The inability of the Debtor to pay ordinary course expenses will drastically inhibit its ability to satisfy payroll obligations, obtain supplies, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of its business. The inability to fund operations will significantly—if not completely—diminish the chances for a successful reorganization. Further, the claim(s) of the Creditor would achieve a *de minimis* recovery absent the permitted use of Cash Collateral as set forth herein, while the closure of the Debtor's ongoing operations would be catastrophic to value. Prohibiting the use of Cash Collateral is not in the best interest of Secured Creditor, as such discontinuation would also materially and adversely impact the value of the collateral securing such interests. It is in the

best interest of the Debtor, the estate, and all creditors to preserve the value of the business and estate.

25. The Debtor believes that the approval of this Motion is in the best interest of the Debtor, creditors, and the estate because it will enable the Debtor to: (a) continue the orderly operation of the business and avoid an immediate shutdown of operations; (b) meet obligations for necessary ordinary course expenditures and other operating expenses; and (c) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor and the estate.

26. Considering the foregoing, the Debtor submits that the proposed adequate protection to be provided for the benefit of the Senior Creditor is appropriate. The Debtor's proposed replacement liens adequately protect the Senior Creditor against any diminution in value, and is also fair and appropriate on an interim basis under the circumstances of this Bankruptcy Case to ensure that the Debtor is able to continue using the cash collateral in the near term for the benefit of all parties in interest and its estate.

27. There is insufficient time for a full and final hearing pursuant to Bankruptcy Rule 4001(b)(2) to be held before the Debtor must use Cash Collateral. If this Motion is not considered on an emergency basis and the Debtor is denied the ability to immediately use Cash Collateral, there will be a direct and immediate material and adverse impacts on continuing operations of the business and the overall value of the estate.

28. In accordance with Bankruptcy Rule 4001(b)(1)(A), a proposed order is attached hereto as **Exhibit B**.

29. In accordance with Local Rule 2081-1(g)(1), a budget showing estimated expenses for the Debtor for the next three (3) months (the "Budget") is attached hereto as **Exhibit A** and is incorporated herein by reference.

WHEREFORE, Debtor respectfully requests the entry of an order: (i) granting Debtor on a preliminary basis the right to use cash collateral; (ii) approving the adequate protection provided to the Secured Creditor being in the form of a replacement lien with the same validity, priority, and extent as the respective creditor had prepetition (if any), and (iii) granting such other further relief as the Court deems just and proper.

Respectfully submitted this 21st day of October 2026,

*/s/ Jeffrey S. Ainsworth*
JEFFREY S. AINSWORTH
Florida Bar No. 60769
**Branson Ainsworth PLLC**
1501 E. Concord Street
Orlando, FL 32803
Phone: 407-894-6834
Fax: 407-894-8559
Primary E-mail: jeff@bransonlaw.com
Secondary: jennifer@bransonlaw.com
tammy@bransonlaw.com
lisa@bransonlaw.com
Attorneys for Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of October 2026, a true and correct copy of the foregoing has been provided electronically through the Court's CM/ECF filing system to all registered recipients, and via U.S. Mail to the following:

Office of the United States Trustee +
501 East Polk Street
Room 1200
Tampa, FL 33602

AVERTIN INVESTMENTS LLC
829 W. Martin Luther King Jr Blvd.
Tampa, FL 33603

United States Small Business Administration
Office of the U.S. Attorney
Civil Process Clerk
400 W. Washington Street, Suite 3100
Orlando, FL 32801

U.S. Attorney General
U.S. Dept. of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

US Small Business Administration
409 3rd St, SW
Washington DC 20416

U.S. Small Business Administration
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, TX 76155

U.S. Small Business Administration
PO Box 740192
Atlanta, GA 30374-0192

/s/ Jeffrey S. Ainsworth_________
JEFFREY S. AINSWORTH
**Branson Ainsworth PLLC**

**EXHIBIT A:**

**BUDGET**

# Ex. A - Cash Collateral

**Avertin Investments LLC**

| GROSS RECEIPTS | Oct | Nov | Dec | Jan | |
|---|---|---|---|---|---|
| Sales | $ 19,100 | $ 19,100 | $ 19,100 | $ 19,100 | $ 76,400.00 |
| (Returns and Allowances) | | | | | $ - |
| **Gross Sales** | **$ 19,100** | **$ 19,100** | **$ 19,100** | **$ 19,100** | **$ 76,400.00** |
| **COST OF GOODS SOLD** | | | | | |
| purchases | | | | | $ - |
| supplies | $ 850 | $ 850 | $ 850 | $ 850 | $ 3,400 |
| **Total Cost of Goods Sold** | **$ 850** | **$ 850** | **$ 850** | **$ 850** | **$ 3,400** |
| **Gross Profit** | **$ 18,250** | **$ 18,250** | **$ 18,250** | **$ 18,250** | **$ 73,000** |
| **EXPENSES** | | | | | |
| Sub V Trustee (required for Sub V) | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | **$ 4,000** |
| Advertising | $ 250 | $ 250 | $ 250 | $ 250 | $ 1,000 |
| Bank Charges | $ 588 | $ 588 | $ 588 | $ 588 | $ 2,350 |
| Insurance | $ 1,700 | $ 1,700 | $ 1,700 | $ 1,700 | $ 6,800 |
| Office Supplies | $ 360 | $ 360 | $ 360 | $ 360 | $ 1,441 |
| Payroll-Net | $ 9,550 | $ 9,550 | $ 9,550 | $ 9,550 | $ 38,200 |
| Professional Fees (Accounting & Legal) | $ 635 | $ 635 | $ 635 | $ 635 | $ 2,540 |
| Rent | $ 558 | $ 558 | $ 558 | $ 558 | $ 2,233 |
| Taxes Paid-Payroll | $ 750 | $ 750 | $ 750 | $ 750 | $ 2,999 |
| Utilities | $ 455 | $ 455 | $ 455 | $ 455 | $ 1,819 |
| Uniforms | $ 84 | $ 84 | $ 84 | $ 84 | $ 335 |
| Telephone | $ 400 | $ 400 | $ 400 | $ 400 | $ 1,600 |
| Vehicle Expenses | $ 1,203 | $ 1,203 | $ 1,203 | $ 1,203 | $ 4,811 |
| Franchise Fees, if applicalbe | | | | | $ - |
| **Total Operating Expenses** | **$ 17,532** | **$ 17,532** | **$ 17,532** | **$ 17,532** | **$ 70,128** |
| **Net Operating Income** | **$ 718** | **$ 718** | **$ 718** | **$ 718** | **$ 2,872** |
| SBA | | | | | $ - |
| Administrative Claims | | | | | |
| General Unsecured | | | | | $ - |
| **Total Debt Service** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| **NET BUSINESS INCOME (LOSS)** | **$ 718** | **$ 718** | **$ 718** | **$ 718** | **$ 2,872** |

**<u>EXHIBIT B</u>:**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:

AVERTIN INVESTMENTS LLC,

Case No.: 8:26-bk-09538-LER
Chapter 11 - Subchapter V

Debtor.
__________________________________________/

**PRELIMINARY ORDER GRANTING**
**MOTION BY DEBTOR-IN-POSSESSION FOR AUTHORITY**
**<u>TO USE CASH COLLATERAL AND EMERGENCY HEARING REQUESTED</u>**

THIS CASE came on for hearing on October ___, 2026, at ______, to consider the *Motion for Authority to Use Cash Collateral and Emergency Hearing Requested* (Doc. ____, "Motion") filed by Debtor-in-Possession, AVERTIN INVESTMENTS LLC ("Debtor"), seeking authorization to use cash collateral and to provide adequate protection to the U.S. Small Business Administration ("SBA" or "Secured Creditor"). The Court, having reviewed the Motion, having found the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, being fully advised in the premises and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is

**ORDERED:**

1. The Motion is hereby **GRANTED** on an interim basis through ____________.

2. Cash Collateral Authorization. Subject to the provisions of this Order, the Debtor is authorized to use cash collateral to pay: (a) amounts expressly authorized by this Court, including payments to the United States Trustee for quarterly fees; (b) the current and necessary expenses set forth in the budget attached as Exhibit A[1] plus an amount not to exceed ten (10) percent for each line item; and (c) such additional amounts as may be expressly approved in writing by Creditor (which approval shall not be unreasonably withheld) within 48 hours of the Debtor's request. The Debtor shall be entitled to prompt court hearings on any disputed proposed expenditures. This authorization will continue until ____________________.

3. Debtor Obligations. Debtor shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Orders of this Court.

4. Replacement Lien. Secured Creditors shall have a perfected post-petition lien against cash collateral to the same extent and with the same validity and priority as the pre-petition lien, without the need to file or execute any documents as may otherwise be required under applicable non-bankruptcy law.

5. Insurance. The Debtor shall maintain insurance coverage for its property in accordance with the obligations under the loan and security documents with Secured Creditors.

6. Without Prejudice. This order is without prejudice to (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of cash collateral or (ii) any other right or remedy which may be available to the Debtor or Secured Creditors.

[1] Expenses contained in Exhibit A that relate to the payments to professionals and the trustee require separate Court approval.

7. Creditors' Committee. The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly-appointed committee to challenge the validity, priority, or extent of any lien(s) asserted against cash collateral.

8. Enforcement. The Court shall retain jurisdiction to enforce the terms of this Order.

9. A continued preliminary hearing on this matter will be held on ___________, 2026, at _________, at which time continued use of cash collateral will be addressed.

# # #

Attorney for Debtor, Jeffrey S. Ainsworth, is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.